## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BENJAMIN SANGRAAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16–cv–0550-MJR |
| | ) | |
| JULIUS FLAAG, | ) | |
| JIMMY D. LEEK, | ) | |
| MCCABE, | ) | |
| D. DOWNS, | ) | |
| JOHN A. DRANNAN, | ) | |
| PITTS, | ) | |
| GREG SCHWARTZ, | ) | |
| CHRISTOPHER JOHNSON, | ) | |
| STEPHEN A. JOHNSON, | ) | |
| TYSHA A. MATHIS, | ) | |
| MARK A. BURTON, | ) | |
| BRAD RITZHEIMER, | ) | |
| MCCANCE, | ) | |
| TYONE MURRAY, | ) | |
| LUCY HEMKER, | ) | |
| AUSTIN | ) | |
| STEPHEN KEIM, and | ) | |
| UNKNOWN JOHN DOE | ) | |
| DEFENDANTS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Benjamin Sangraal, formerly an inmate at Centralia Correctional Center ("Centralia") and Pinckneyville Correctional Center, ("'Pinckneyville") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

Although Plaintiff is no longer incarcerated, he has moved to proceed pro-se in the action.   Therefore the Court will conduct a preliminary review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), which provides:

> Not withstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss at any time if the court determines that the action or appeal
>      i.   is frivolous or malicious;
>     ii.   fails to state a claim on which relief may be granted; or
>    iii.   seeks monetary relief from a defendant who is immune from such relief.

Initially, however, the Court shall consider whether the distinct claims in this case against various Defendants may appropriately proceed together in the same case. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

## The Complaint

Plaintiff is a practicing Pagan, and set up a Pagan/Wiccan study circle at Centralia.  (Doc. 1, p. 1-2).  Despite this, he remained unsatisfied with the degree of accommodation to his religious practices at the prison, and filed a lawsuit alleging certain violations of his religious rights.  (Doc. 1, p. 2).  Plaintiff filed the lawsuit on June 4, 2014, see Case No. 14-cv-661, although he alleges that he finished writing it on May 12, 2014 and that the defendants were aware that he intended to file it as of that date.  (Doc. 1, p. 14).  Plaintiff alleges that other inmates wished to join in his lawsuit, and to that end, he prepared form grievances for them to sign.  (Doc. 1, p. 11-12).  Two inmates

submitted identical grievances from a copy provided by Plaintiff with their personal information and signatures, while another copied out the template Plaintiff had provided in longhand.  (Doc. 1, p. 12).

On May 14, 2014, Leek interviewed Plaintiff regarding the three identical grievances, allegedly at McCabe's request.  (Doc. 1, p. 15).  Leek then wrote Plaintiff a disciplinary ticket.  (Doc. 1, p. 17).  The ticket was sanctioned by Greg Schwartz and served by L. Waters.  (Doc. 1, p. 17).  All of the grievances drafted by Plaintiff were ultimately rejected as improper.  (Doc. 1, p. 17).

Plaintiff wrote an emergency grievance to Warden Flagg regarding his impending disciplinary hearing, but the grievance was rejected as a non-emergency. (Doc. 1, p. 16).

The adjustment committee, consisting of Stephen Johnson, McCance, and Mathias, held hearing on May 19, 2014.  (Doc. 1, p. 20).  Plaintiff alleges that there were multiple due process violations during the hearing.  (Doc. 1, p. 20). Plaintiff was sentenced to one month segregation, two months of c-grade, two months exercise restriction and a disciplinary transfer to a higher-security facility.  (Doc. 1, p. 22).

Plaintiff's personal property was then searched on May 19, 2014 due to his placement in segregation.  (Doc. 1, p. 22).  Drannan and Downs wrote Plaintiff a disciplinary ticket for 308 contraband/unauthorized property for having excess property.  (Doc. 1, p. 23).  Pitts signed off on the ticket.  (Doc. 1, p. 23).  Plaintiff's entire

stash of foodstuff was confiscated, along with a large plastic bowl he used to prepare meals, which he was not able to replace.  (Doc. 1, p. 24).

Plaintiff was not given another hearing on the excess property ticket; instead, the disciplinary report was allegedly falsified to show that he plead guilty on May 22, 2014. (Doc. 1, p. 24).  When Plaintiff was released from segregation, his property box was only half full.  (Doc. 1, p. 24).

During the search, Officers Downs and Drannan also found Plaintiff's journal. (Doc. 1, p. 22).  The first page of the journal contained a notice: "Privileged Material Attorney-Client Work Product Record."  (Doc. 1, p. 22).  The officers read the journal in its entirety.  (Doc. 1, p. 22).  The journal contained descriptions of instances of staff misconduct, documentation regarding grievances and legal filings, notes on Plaintiff's physical and mental condition, thoughts, dreams, spiritual experiences, etc.  (Doc. 1, p. 22-23).  Prison staff accused Plaintiff of including accounts of sexual activity between Plaintiff and his cellmate in the journal, in violation of the Prison Rape Elimination Act. (Doc. 1, p. 26).

Plaintiff met with Christopher Johnson of Internal Affairs on May 21, 2014.  (Doc. 1, p. 25). Christopher Johnson told Plaintiff that the warden was aware of his complaints about retaliation, and that he had ordered Plaintiff's placement in segregation.  (Doc. 1, p. 25).  Christopher Johnson revealed that Hemker had searched Plaintiff's legal box and discovered material that she believed was not legal, as it was creative works and intellectual property.  (Doc. 1, p. 25).  Plaintiff maintains that all the property in his box

was legal.  Christopher Johnson then produced the disputed box and ordered Plaintiff to open several sealed envelopes in the box, or face additional disciplinary charges. (Doc. 1, p. 26).  Christopher Johnson then conceded that the sealed envelopes contained legal materials.  (Doc. 1, p. 26).

Christopher Johnson then questioned Plaintiff about the sexual passages in his journal.  (Doc. 1, p. 27).  Christopher Johnson then allegedly interviewed Plaintiff's cellmate and showed him the journal.  (Doc. 1, p. 27).  Plaintiff alleges that as a result of this incident, rumors about Plaintiff's sexuality spread through Centralia and Pinckneyville, exposing him to risk from the inmate population.  (Doc. 1, p. 27). Plaintiff was ultimately issued a disciplinary ticket based on his journal for 204 insolence, 308 contraband, and 310 abuse of privileges.  (Doc. 1, p. 29).  The ticket was written by Christopher Johnson, sanctioned by Schwartz and investigated by McCance. (Doc. 1, p. 29).

That disciplinary ticket regarding the journal was heard on May 27, 2014 by Stephen Johnson, Burton, and Ritzheimer.  (Doc. 1, p. 30).   Plaintiff alleges that Burton was biased against him prior to the hearing, and continually interrupted and harassed him during the hearing.  (Doc. 1, p. 32, 34).  No counselor was provided at the hearing. (Doc. 1, p. 31).  Plaintiff was sentenced to one month of segregation, two months of c-grade, and two months exercise restriction.  (Doc. 1, p. 34).  Flagg signed off on the adjustment committee report.  (Doc. 1, p. 35).

Plaintiff's journal was never returned.  (Doc. 1, p. 35).  Plaintiff alleges that the failure to return the journal, which allegedly contained details of numerous interactions with IDOC staff that violated Plaintiff's civil rights, made filing those claims impractical or impossible.  (Doc. 1, p. 35).

Also, on May 27, 2014, Christopher Johnson brought Plaintiff a mail-voucher to sign in order to send the non-legal materials found in his legal property box out of the institution.  (Doc. 1, p. 35).  Plaintiff started to ask why he had to send the material out as it was not contraband, when Christopher Johnson became visibly irate and yelled "I'm not going over this with you!  I'll just write you a ticket then!" and slammed the chuck hole.  (Doc. 1, p. 36).  Plaintiff received a disciplinary ticket for this incident on May 29, 2014 for 303 false information, 308 contraband, and 310 abuse of privileges. (Doc. 1, p. 37).  Christopher Johnson wrote the ticket, Schwartz sanctioned it, and Ritzheimer served it.  (Doc. 1, p. 37).  Although Plaintiff eventually signed a voucher so that the materials could be mailed out to his family, they were ultimately forwarded to him at Pinckneyville, despite the fact that his account was debited $6.99.  (Doc. 1, p. 42).

Plaintiff appeared before an adjustment committee consisting of Stephen Johnson, Burton, and McCance on June 5, 2014 on charges stemming from his alleged refusal to mail out the non-legal materials found in his legal property box.  (Doc. 1, p. 40).  Plaintiff objected to these officers, as he had just named them enemies on June 3, 2014.  (Doc. 1p. 40-41).  Plaintiff requested his cell mate as a witness, but his cell mate was released from prison prior to the hearing.  (Doc. 1, p. 41).  Plaintiff also believes that

Stephen Johnson did not properly consider his rebuttal arguments or evidence.  (Doc. 1, p. 42).  Flagg signed off on the adjustment committee report on June 5, 2014.  (Doc. 1, p. 42).

Plaintiff alleges that as a result of the time he spent in segregation at Centralia, he was unable to attend Pagan religious services, lost phone privileges, and had diminished access to law library materials.  (Doc. 1, p. 43-45).  He further alleges that as a result of his disciplinary transfer to Pinckneyville, he lost his LED television through property damage, lost weight because Pinckneyville's two-meal plan is inadequate, suffered from fewer exercise opportunities and smaller cells, lost muscle tone, had fewer opportunities to use the phone, received fewer visits from his mother, and was deprived of all Pagan worship opportunities and a Pagan diet.  (Doc. 1 p. 45-48).  Plaintiff also alleges that an unknown IA officer at Pinckneyville threatened him to prevent him from filing more grievances and told him that he had been "warned" about Plaintiff by one or more persons at Centralia.  (Doc. 1, p. 48).

Warden Austin allegedly told Plaintiff that all legal mail is routinely opened by staff, except for correspondence with the State Appellate Defender.  (Doc. 1, p. 27).  Lt. Johnson also told Plaintiff that Centralia staff regularly open mail.  (Doc. 1, p. 33).  Plaintiff has received letters from the Office of the State Appellate Defender, and other protected parties that have been opened and resealed with Scotch tape, or ripped open in a manner intended to suggest normal wear and tear.  (Doc. 1, p. 33).  Lt. Johnson further told Plaintiff that no legal materials are ever privileged.  (Doc. 1, p. 33).  On May

19, 2014, Plaintiff wrote a letter to the Director of the State Police, requesting an investigation into the harassment he had been experiencing.  (Doc. 1, p. 36).  Plaintiff marked the envelope as confidential and sent it out, but when it was returned by the postal service as "undeliverable," the staff at Centralia opened the letter and read the contents.  (Doc. 1, p. 37).

On July 21, 2014, Plaintiff met with Chaplain Keim, the chaplain for the entire IDOC in the visiting room.  (Doc. 1, p. 50).  Plaintiff discussed his need for a kosher diet, as he believes the kosher diet option conforms most closely to his religious beliefs.  (Doc. 1, p. 50).  Keim ultimately denied Plaintiff's request, and he never received any kosher meals.  (Doc. 1, p. 50).

<u>Discussion</u>

Plaintiff has divided his complaint into approximately 67 individual counts.  The Court rejects this division as unworkable and not adequately based on the relevant case law.  Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into 23 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The following claims survive threshold review.

**Count 1 – Leek, McCabe, Schwartz, Flagg, Pitts, Downs, Austin, Christopher Johnson, and Drannan retaliated against Plaintiff for engaging in protected conduct by writing Plaintiff four disciplinary tickets**

**Count 2: Stephen Johnson, Mathis, McCance, and Flagg retaliated against Plaintiff when they found him guilty of the disciplinary ticket on 5/19/14**

Count 3: Stephen Johnson, Mathis, McCance, Flagg, and John Doe improperly burdened the exercise of Plaintiff's religion by approving a disciplinary transfer to Pickneyville Correctional Center in violation of the First Amendment

Count 4: Stephen Johnson, Burton and Ritzheimer retaliated against Plaintiff when they found him guilty on the third disciplinary ticket on 5/27/14.

Count 5: Stephen Johnson, McCance, Burton, and Flagg retaliated against Plaintiff when they found him guilty of the fourth disciplinary ticket on 6/5/14

Count 6: Flagg improperly burdened Plaintiff's exercise of his religion when he refused to allow him to attend chapel service while in segregation

Count 7: Hemker violated Plaintiff's right of access to the Courts when he charged him for case law due to his status as a segregation inmate

Count 8: John Doe retaliated against Plaintiff when he contacted internal affairs at Pinckneyville to warn them about Plaintiff's practice of filing complaints and grievances

Count 9: Stephen Johnson, Mathis, and McCance violated Plaintiff's due process rights via the manner in which the 5/19/14 disciplinary hearing was conducted and by finding Plaintiff guilty

Count 10: Stephen Johnson, Mathis, McCance, Flagg, Burton, and Ritzheimer conspired to violate Plaintiff's due process rights when they found Plaintiff guilty of discipline on 5/19/14, 5/27/14, and 6/5/14

Count 11: Stephen Johnson, Mathis, McCance, and Flagg violated the equal protection clause of the Fourteenth Amendment by singling Plaintiff out on the basis of his religion.

Count 12: Pitts, Downs, Drannan, Christopher Johnson, and Austin violated Plaintiff's First Amendment and Fourth Amendment rights when they read and confiscated his legal work-product journal

Count 13: Flaag, Pitts, Downs, Burton and Drannan violated Plaintiff's due process rights by issuing and finding him guilty on the second disciplinary ticket without a hearing on 5/27/14

Count 14: Hemker, Christopher Johnson, and Austin violated Plaintiff's rights under the First and Fourth Amendments by searching Plaintiff's sealed legal materials outside of his presence and directing him to open others.

**Count 15:   Christopher Johnson violated Plaintiff's Eighth Amendment rights and retaliated against Plaintiff when he discussed the contents of Plaintiff's journal with his cellmate, causing Plaintiff to have a reasonable expectation of experiencing harm**

**Count 16:   Schwartz and Christopher Johnson violated Plaintiff's equal protection rights to the extent that the third disciplinary ticket was issued on the basis of Plaintiff's perceived sexual orientation.**

**Count 17:  Schwartz and Christopher Johnson retaliated against Plaintiff based on the content of his journal**

**Count 18:   Stephen Johnson, McCance, and Burton violated Plaintiff's due process rights due to the manner in which the hearing on the third disciplinary ticket was conducted on 6/5/14**

**Count 19:   Christopher Johnson and McCance violated Plaintiff's First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment rights, and violated Illinois State law when they confiscated Plaintiff's journal.**

**Count 20: Christopher Johnson has interfered with Plaintiff's right of access to the Courts by confiscating Plaintiff's journal**

**Count 21:   Christopher Johnson and John Doe violated Plaintiff's Fifth Amendment, Fourteenth amendment, and rights under Illinois state law when they fraudulently charged him $6.99 to mail out his property and then failed to mail out the property.**

**Count 22:  By opening Plaintiff's returned mail to the State Police Director, John Doe violated Plaintiff's First Amendment rights**

**Count 23: Keim violated Plaintiff's rights to free exercise of his religion by refusing to approve a kosher diet for Plaintiff**

Plaintiff contends that the majority of his claims stem from retaliation against him for filing grievances, complaints, and for practicing his religion.  He has further alleged that this incidents form a campaign of harassment perpetuated by defendants at Centralia Correctional Center.  However, Plaintiff has not alleged that the unknown

John Doe defendant who allegedly opened his returned mail from the State Police Director is one of the other defendants, nor has he alleged that the John Doe defendant was involved in the cycle of retaliation and harassment that make up Plaintiff's other claims.  Additionally, Plaintiff's claim against Keim took place after the other events that Plaintiff complains of here, and at Pinckneyville Correctional Center.  Plaintiff has also not implicated Keim in any of his other counts or alleged that the other defendants knew or communicated with Keim.  Counts 22 and 23 against Keim are factually distinguishable from his other claims because they involve a different defendant and different conduct.

The uniqueness of Counts 22 and 23 raises the question of whether all of Plaintiff's claims may properly proceed together in the same action.  In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)(g)).  Claims against different defendants, which do not arise from a single transaction or occurrence (or a series of related transactions/occurrences), and do not share a common question of law or fact, may not be joined in the same lawsuit.  *See* Fed. R. Civ. P. 20(a)(2).  Further, a prisoner who files a "buckshot complaint" that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should

have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21, or to dismiss improperly joined Defendants.  *See Owens v. Hinsely*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Here the claims against the John Doe mailroom clerk are not factually or legally related to Plaintiff's other claims.  In fact, Plaintiff has alleged that the staff at Centralia interpreted the mail policy incorrectly, and that he was repeatedly told that the policy applied to all mail, not just his.  This allegation then, is not reasonably related to the course of harassment that comprises the bulk of Plaintiff's complaint.  Additionally, the claims against Chaplain Keim are not factually or legally related to the other claims in Counts 1-21.  While Plaintiff has alleged that the IDOC in general was prejudiced against his religion, he has not provided any facts tending to connect his claims regarding the Centralia defendants' campaign of harassment against him to the denial of a kosher diet at Pickneyville.  The complaint does not suggest that any of the defendants named in Counts 1-21 were personally involved in the denial of the kosher diet described in Count 23.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims in Counts 22 and 23 (which are unrelated to Counts 1-21) into a separate actions.  Count 22 and 23 shall be severed into separate cases containing one count each.  The severed cases shall have newly-assigned case numbers.  Plaintiff

shall be assessed two more filing fees for the newly severed cases.  The severed cases shall undergo preliminary review pursuant to 1915A after new case numbers and judge assignments have been made.

Counts 1-21 shall remain in this action.  A separate order shall be issued in this case to review the merits of these claims.  Plaintiff shall be provided with a copy of the merits review order as soon as it is entered.  No service shall be ordered on any Defendant at this time, pending the § 1915A review.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNT 22** and **COUNT 23**, which are unrelated to the claims in **COUNTS 1-21** are **SEVERED** into two new cases. One new case shall contain the claims against **JOHN DOE** mailroom employee.  The other new case shall contain the claims against **DEFENDANT KEIM.**

The claims in the newly severed cases shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made.  In the new cases, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order
2) The Original Complaint (Doc. 1)
3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff **will be responsible for an additional $350.0 filing fee** in both the newly severed cases.  No service shall be ordered on the defendant in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the _**only claims remaining in this action are Counts 1-21**_ against Defendants Julius Flagg, Jimmy Leek, Lt. McCabe, D. Downs, John A. Dranna, Lt. Pitts, Greg Schawarz, Christopher Johnson, Stephen A. Johnson, Tysha Mathis, Mark Burton, Brad Ritzheimer, McCance, Tyone Murray, Lucy Hemker, Austin, and John Doe.

**IT IS FURTHER ORDERED** that Defendant **KEIM** is **TERMINATED** from **this** action with prejudice.

**IT IS SO ORDERED.**

**DATED: July 6, 2016**

s/ MICHAEL J. REAGAN
**U.S. District Judge**